
EOD
02/25/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DWIGHT L. CHAMBERS and | § | Case No. 05-40942 |
| MICHELLE A. CHAMBERS, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| | § | |
| CHRISTOPHER J. MOSER, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 06-4119 |
| | § | |
| BANK OF TEXAS, VIRGINIA | § | |
| ARCHER REESE and MICHELLE | § | |
| CHAMBERS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

In this turnover action, Christopher J Moser, the Chapter 7 trustee for the bankruptcy estate of Dwight and Michelle Chambers, seeks to recover Michelle Chambers' alleged interest in the assets of a trust created by her grandfather, Burl Archer. The facts of this case are undisputed and were submitted to the Court by the stipulation of the parties. Following a hearing on August 1, 2007, the Court invited the parties to submit further legal briefing and scheduled the matter for later ruling.

The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 as adopted and applied to this case by Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact is construed to be a

conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

## INTRODUCTION

As discussed more fully below, Michelle Chambers created a self-settled trust prior to bankruptcy. This trust was, by its terms, funded with Michelle Chambers' interest in the corpus of her grandfather's trust, among other things. Since there is no dispute that the trust created by Michelle Chambers is property of the bankruptcy estate, the Chapter 7 trustee seeks turnover of the assets in the trust, namely, Michelle Chambers' interest in the corpus of the trust created by her grandfather. The Bank of Texas, as the trustee of Burl Archer's trust, opposes the Chapter 7 trustee's request for turnover, arguing that the trust created by Burl Archer is a spendthrift trust under Texas law and, therefore, that Michelle Chambers' interest in the trust created by Burl Archer has not actually been conveyed to her own trust.

## BACKGROUND

### A. The Archer Trust

Burl Archer (the "Settlor") established an intervivos trust on August 14, 1991 (hereinafter referred to as the "Archer Trust"). The Archer Trust was originally funded with one dollar ($1.00), and Section IV anticipated that additions or assignments would be made to the corpus of the Archer Trust. It is not clear from the record, however, when and what additions were made to the corpus of the Archer Trust.

Paragraph 1 of Section VI of the Archer Trust describes the Settlor's intended trust purposes and identifies the beneficiaries as follows:

> This Trust is created for the use and benefit of Settlor and Settlor's wife, Virginia Archer, during their lifetimes, and after the death of Settlor and

> Settlor's wife, Virginia Archer, Settlor's daughter, Sandra Archer and Settlor's granddaughter, who Settlor has raised as his daughter, Michelle Denise Reinig.

The Settlor's spouse, Virginia Archer, and Ameritrust Texas, N.A. were originally co-trustees of the Archer Trust. Ameritrust Texas, N.A. was succeeded by Alliance Trust Company which, in turn, was succeed by the Bank of Texas. Virginia Archer resigned as co-trustee on June 30, 2004, leaving the Bank of Texas to continue serving as sole trustee of the Archer Trust.[1]

Burl Archer died on August 21, 1991. The Trust became irrevocable upon his death, and the most of the corpus and accumulated income were distributed to Virginia Archer "free of Trust." *See* Archer Trust § 3A.[2] The relevant distribution provisions are described in Paragraph 3A of Section VI of the Archer Trust, as follows:

> The Trust shall terminate upon the death of the survivor of Settlor, Settlor's wife, Virginia Archer, Settlor's daughter, Sandra Archer and Settlor's granddaughter, Michelle Denise Reinig. After Settlor's death the Trust should be distributed in the following manner:
>
> A. At Settlor's death, after payment of expenses and provisions for taxes as heretofore provided, the entire corpus and accumulated income of the Trust in excess of the amount that is not subject to Federal Estate Tax (commonly known as the exemption equivalent) shall be distributed to Virginia Archer, wife of Settlor, free of Trust… The *remainder of the corpus* of the Trust *shall be held* together and administered as a Trust *for the lifetime of Virginia Archer* and until distribution to other beneficiaries.

---

[1] Virginia Archer is still living. She has remarried and is referred to in the style of this adversary proceeding and in some of the parties' briefing as Virginia Archer Reese. For the sake of consistency, however, this Court refers to Virginia Archer Reese as Virginia Archer throughout this Memorandum Opinion.

[2] If Virginia Archer had pre-deceased her husband, the portion of the trust that went to her "free of Trust" would have, instead, been distributed to the Archer Family Charitable Remainder Unitrust. *See* Archer Trust § VI, ¶ 3B. The remainder would have been divided between Sandra Archer and Michelle Chambers. *See id.* Income would have been available to the beneficiaries, and the trustee would have had the power to invade the corpus of the trust under certain circumstances. *See id.* The portion of the trust set aside for each of the beneficiaries would have vested in and been distributed to that beneficiary when she had attained 65 years of age or qualified for social security. *See id.*

3

(Emphasis added.)

The Archer Trust does not provide for any distribution of the income or corpus of the trust to Michelle Chambers during Virginia Archer's lifetime. In the event any portion of the Archer Trust vested in Michelle Chambers (formerly known as Michelle Denise Reinig) before she reached 21 years of age, the trustee, in its sole discretion, was to hold her interest until she attained 21 years of age or distribute her interest to her or to her parent or guardian. *See* Archer Trust § VI, ¶ 4. The Archer Trust grants Michelle Chambers "a power of appointment over the portion of the Trust set aside for her, exercisable by her Last Will and Testament, to appoint her portion of the Trust in any manner that she sees fit." Archer Trust §VI, ¶ 3C. In the event Michelle Chambers dies before taking under the Archer Trust and fails to exercise her power of appointment, any portion of the Archer Trust that would have been available for distribution to her is to "vest in and be distributed to her issue per stirpes." Archer Trust, § VI, ¶ 3D.

### B. The Chambers Trust

On July 17, 1996, Michelle Chambers established an irrevocable intervivos trust (hereinafter referred to as the "<u>Chambers Trust Agreement</u>" or the "<u>Chambers Trust</u>"). Michelle Chambers named Alliance Trust Company (now known as the Bank of Texas) as trustee and herself as the sole beneficiary.

Article 2 of the Chambers Trust describes three separate trusts, including the Archer Trust, in which Michelle Chambers has an interest. Michelle Chambers purports to convey or assign her interest in each of these trusts to the Chambers Trust. With respect to Michelle Chambers' interest in the Archer Trust, Article 2 of the Chambers Trust provides as follows:

4

> In addition, Settlor is the *vested beneficiary* of a testamentary trust known as the Burl Archer Trust, and the trustee of that trust, at Settlor's direction and with Settlor's concurrence, has transferred, conveyed, and assigned to the Trustee of this trust, and by these presents does transfer, convey, and assign, without consideration and on my behalf, *all of the assets of the Burl Archer Trust*.

(Emphasis Added.)

Virginia Archer and the Bank of Texas were co-trustees of the Archer Trust at the time of the creation of the Chambers Trust. According to the affidavit of Michelle Chambers, which is attached to the Chapter 7 trustee's motion for summary judgment, the creation of the Chambers Trust and the "plan to … devolve Michelle's vested portions [in the Archer Trust] to [the Chambers Trust]" was "entirely the idea … of Virginia Archer." An attorney for Virginia Archer drafted the Chambers Trust Agreement, and Alliance Trust Company, as trustee for both the Chambers Trust and the Archer Trust, signed the Chambers Trust Agreement. However, in her answer to the Plaintiff's adversary complaint, Virginia Archer denies that Michelle Chambers' interest in the Archer Trust had vested at the time of the creation of the Chambers Trust or that her interest in the Archer Trust was transferred to the Chambers' Trust.[3]

Attached to the Chambers Trust Agreement and bearing the same date as the Chambers Trust Agreement is Schedule "A" wherein the Bank of Texas, as trustee of the Chambers Trust, acknowledges receipt from Michelle Chambers of the "assets which have been transferred to it as Trustee" in accordance with the Chambers Trust agreement. The sole asset described on Schedule "A" is "Ten Dollars ($10.00) Cash." No assets other than the initial ten dollar cash contribution have been transferred or conveyed into

---

[3] The parties have not submitted any affidavit by Virginia Archer or copies of any deposition testimony. Due to Virginia Archer's failing health, the parties stipulated that she would not be offered as a witness or compelled to testify.

the Chambers Trust, and no fiduciary income tax returns have been filed by the Bank of Texas. Prior to the initiation of this adversary proceeding, the Bank of Texas, in its capacity as the trustee of the Archer Trust, had not received any written demand from Michelle Chambers that assets should have been transferred from the Archer Trust to the Chambers Trust.

### C. The Bankruptcy Petition

On February 28, 2005, Michelle Chambers and her husband, Dwight Chambers (collectively, the "Debtors"), jointly filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). On May 24, 2005, the case was converted to Chapter 13. On December 1, 2005, the case was voluntarily re-converted to Chapter 7, and Christopher J. Moser was thereafter appointed to serve as the Chapter 7 trustee.

The Chapter 7 trustee initiated this adversary proceeding on April 7, 2006, by filing an "Original Complaint for Turnover of Property" against the Bank of Texas pursuant to 11 U.S.C. §542(a). The Chapter 7 trustee subsequently amended his complaint to add Virginia Archer and Michelle Chambers as defendants. In his complaint, as amended, the Chapter 7 trustee seeks a judgment: (i) declaring that, at the time of the creation of the Archer Trust, Michelle Chambers was a vested beneficiary in one-half of the assets of the Archer Trust, (ii) declaring that such vested interest was transferred to the Chambers Trust, and (iii) ordering the Bank of Texas to surrender to the Chapter 7 trustee all of the assets and related income and proceeds that were the subject of the transfer to the Chambers Trust.

The Court scheduled the trial of this adversary proceeding for August 1, 2007. On June 20, 2007, the Trustee and the Bank of Texas filed motions requesting summary judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056. At the trial on August 1, 2007, the parties stipulated to the facts set forth in their summary judgment motions and presented their respective legal arguments regarding the application of the law to the stipulated facts. Following trial, at the invitation of the Court, the Chapter 7 trustee and the Bank of Texas submitted additional legal briefs regarding the powers and duties of co-trustees under Texas law.

## DISCUSSION

Under the Bankruptcy Code, all property, "wherever located and by whomever held" in which the debtor has a legal or equitable interest, becomes property of the bankruptcy estate. 11 U.S.C. §541(a). As the legislative history demonstrates, the sweep of this section was intended to include a broad range of property. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198 (1983). The reach of §541, however, is curtailed by §541(a)(2) which states:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Section 541(c)(2) serves to exclude a debtor's beneficial interest in a trust from the bankruptcy estate if the trust is subject to a transfer restriction enforceable under nonbankruptcy law (*i.e.*, if the trust is a valid spendthrift trust). *See Matter of Moody,* 837 F.2d 719, 723 (5th Cir. 1988).

Here, the Archer Trust and the Chambers Trust were created pursuant to Texas law, and both Trust Agreements specifically reference provisions of the Texas Trust

Code. The parties agree that the Chambers Trust is *not* a spendthrift trust and that the assets of the Chambers Trust are property of the bankruptcy estate. The parties further agree that the Archer Trust *is* a spendthrift trust and that the assets of a spendthrift trust are generally excluded from the bankruptcy estate pursuant to §541(c)(2) of the Bankruptcy Code.[4] The parties dispute whether Michelle Chambers' interest in the Archer Trust has been effectively transferred to the Chambers Trust.

### A. Michelle Chambers' Interest in the Archer Trust

In any active trust, the legal title and right of possession are vested in the trustee. *See Long v. Long*, 252 S.W.2d 235, 247 (Tex. Civ. App. – 1952). However, it is "the beneficiary [who] is considered the real owner of the property, holding equitable or beneficial title." *Hallmark v. Port/Cooper-T. Smith Stevedoring Co.,* 907 S.W.2d 586, 589 (Tex. App. -- Corpus Christi 1995, no writ). A trust beneficiary who has capacity to transfer property has the power to transfer her equitable interest, unless restricted by the terms of the trust. *See Moody v. Moody Nat'l Bank of Galveston,* 522 S.W.2d 710, 715-16 (Tex.App. -- Houston [14th Dist.] 1975, writ ref'd n.r.e.).

Under Texas law, an agreement to assign or transfer a beneficial interest in a trust is invalid when the assignment or transfer is subject to a spendthrift provision in the trust. *See* TEX. PROP.CODE § 112.035(a); *Dierschke v. Central Nat'l Branch of First Nat'l Bank at Lubbock,* 876 S.W.2d 377, 380 (Tex. App. -- Austin 1994, no writ). A spendthrift trust is defined in the Texas Trust Code as a "trust [in which] the interest of a beneficiary in

---

[4] In his adversary complaint, as amended, the Chapter 7 trustee asserts that the spendthrift provision in the Archer Trust is "ineffective … as a result of Texas Property Code §112.035," which provides that spendthrift provisions are not effective where the settler is also a beneficiary of the trust. Amended Complaint at ¶ 10. The Chapter 7 trustee reasserts this argument in paragraph 14 of his request for summary judgment but then states in paragraph 18 that he does not dispute that the Archer Trust is a spendthrift trust.

8

the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee." TEX. PROP. CODE §112.035(a). A spendthrift provision terminates with the termination of the trust. *See Faulkner v. Bost,* 137 S.W.3d 254, 261 (Tex. App. -- Tyler 2004); TEX. PROP.CODE § 112.052.

Here, the Archer Trust expressly prohibits Michelle Chambers from voluntarily or involuntarily alienating her interest in the Archer Trust, as follows:

> No beneficiary of the Trust created hereunder, except Settlor, shall have any right or power to anticipate, pledge, assign, sell, transfer, alienate, or encumber his or her interest in this Trust in any way; nor shall any such interest in any manner be liable for or subject to the debts, liabilities, or obligation of any beneficiary or claims of any sort against any such beneficiary.

Archer Trust, §XI. When a trust contains express prohibitions against alienation, as in this case, it is a spendthrift trust under Texas law. *See, e.g., Texas Commerce Bank, NA v. United States*, 908 F. Supp. 453, 457 (S.D. Tex. 1995). The Archer Trust will terminate, by its terms, "upon the death of the survivor of the Settlor, Settlor's wife, Virginia Archer, Settlor's daughter, Sandra Archer, and Settlor's granddaughter, Michelle Denise Reinig." Archer Trust § VI, ¶ 3 and § VIII, ¶ 5.

In general, no part of a spendthrift trust estate can be voluntarily transferred by the beneficiary or reached by his or her creditors. *See, e.g., Bank of Dallas v. Republic Nat. Bank of Dallas,* 540 S.W.2d 499, 501 (Tex. Civ. App. -- Waco 1976, writ ref'd n.r.e.); *Hines v. Sands,* 312 S.W.2d 275, 278 (Tex. Civ. App. -- Fort Worth 1958, no writ). *See also In re Brooks,* 60 B.R. 155, 159 (Bankr. N.D. Tex. 1986) (discussing spendthrift trusts under Texas law). There is an exception to this general rule if the settlor is also a beneficiary of the trust. In that case, "a provision restraining the

9

voluntary or involuntary transfer of the settlor's beneficial interest does not prevent the settlor's creditors from satisfying claims from *the settlor's interest* in the trust estate." TEX. PROP. CODE §112.035(d) (emphasis added). *See also Judson v. Witlin,* 640 F.2d 661, 663 (5th Cir. 1981) (discussing the public policy supporting this exception). In other words, the trust loses the asset shield provided by the spendthrift provision to the extent of the settlor's beneficial interest in the trust. *See In re Shurley*, 117 B.R. 769 (Bankr. W.D. Tex. 1994), *rev'd on other grounds*, 115 F.3d 333 (5th Cir. 1997).

In this case, the Archer Trust was "set up primarily for the protection of the Settlor and the Settlor's wife, Virginia Archer." Archer Trust § VI, ¶ 2. After Burl Archer's death, "the entire corpus and accumulated income of the trust in excess of the amount that [was] not subject to Federal Income Tax" was distributed to Virginia Archer, "free of Trust." Archer Trust § VI, ¶ 3A. Paragraph 3A of Section VI provides that the remainder of the Archer Trust is to continue be administered "for the lifetime of Virginia Archer and until distribution to other beneficiaries." Archer Trust § VI, ¶ 3A.[5]

Although the spendthrift provision would not have prevented Burl Archer's creditors from reaching Burl Archer's interest in the trust corpus during his lifetime, this fact did not render the spendthrift provision void or ineffective as to the other beneficiaries of the Archer Trust. *See* TEX. PROP. CODE 112.035(d). The Archer Trust had a purpose other than the protection of the trust corpus from Burl Archer's creditors, and it appears that, under Texas law, the spendthrift provision is severable and void only as to any remaining interest of Burl Archer. *See Fewell v. Republic Nat. Bank of Dallas*,

---

[5] The Chapter 7 trustee's reliance on Paragraph 3B of Section VI to show that Virginia Archer and the Bank of Texas, as co-trustees of the Archer Trust, had the power to make a distribution to Michelle Chambers is misplaced – this paragraph, by its terms, would have applied only if Virginia Archer had died before Burl Archer.

10

513 S.W.2d 596 (Tex. Civ. App. 1974, writ refused n.r.e.) (as to the interest of the settlor-beneficiary, the spendthrift provision was severable and did not render the entire trust void); *In re Goff*, 812 F.2d 931, 933 (5th Cir. 1987) (discussing *Fewell*). *See generally In re Shirley*, 171 B.R. at 182 (collecting authority). Since the Archer Trust has not yet terminated, Michelle Chambers' interest remains subject to the spendthrift provision. As a matter of fact, her interest has not be transferred and delivered to the Chambers Trust. The Court, therefore, concludes that Michelle Chambers did not, and, indeed, could not, transfer any portion of the corpus of the Archer Trust, or her interest in the Archer Trust, by executing the Chambers Trust Agreement.

### B. The Alleged Transfer of Michelle Chambers' Interest in the Archer Trust to the Chambers Trust

Although the Chapter 7 trustee admits in his request for summary judgment that the Archer Trust is a spendthrift trust, he asserts "that is just not important." The Chapter 7 trustee argues that the language cited above in the Chambers Trust Agreement whereby Michelle Chambers purports to transfer and assign to the trustee of the Chambers Trust "all of the assets of the Archer Trust" is binding on the Bank of Texas. As evidence that the co-trustee's of the Archer Trust intended to and did, in fact, transfer the corpus of the Archer Trust to Michelle Chambers, the Chapter 7 trustee also relies upon the statements of Michelle Chambers in her affidavit and the description in the Chambers Trust Agreement of Michelle Chambers' "vested" interest in Archer Trust.

The Bank of Texas and Virginia Archer respond that, as co-trustees of the Archer Trust, they did not have the discretionary authority or power pursuant to the terms of the Archer Trust to transfer trust corpus to any beneficiary after Burl Archer's death in 1991. The Archer Trust specifically provides that, in the event Burl Archer pre-deceases

Virginia Archer, the remainder of the trust "shall be" held and administered for the lifetime of Virginia Archer.[6] The Archer Trust also expressly prohibits Virginia Archer from "invading" the corpus of the trust after Settlor's death for her own benefit. *See* Archer Trust § VI, ¶ 2.

Michelle Chambers, as the beneficiary of a spendthrift trust, had no ownership interest in the Archer Trust or its assets and no authority to force Virginia Archer or the Bank of Texas to distribute trust assets. *See Wilson v. United States (In re Wilson)*, 140 B.R. 400 (Bankr. N.D. Tex. 1992). There is no language in the Archer Trust whereby Michelle Chambers has any interest whatsoever in "all of the assets" of the Archer Trust. The fact that Virginia Archer paid an attorney to draft the Chambers Trust Agreement, and that the Bank of Texas signed the Chambers Trust as co-trustee of the Archer Trust, may constitute some evidence of their intent to act in violation of the Archer Trust Agreement, but does not alter the prohibition of any transfer of the corpus of the Archer Trust to Michelle Chambers prior to Virginia Archer's death. *See* Archer Trust § VI, ¶ 3A. To transfer those assets in violation of the terms of the Archer Trust could have subjected Virginia Archer and the Bank of Texas to breach of fiduciary duty claims by Virginia Archer's daughter, who is also a beneficiary of the Archer Trust. *See* Archer Trust § VIII, ¶1. *See also, e.g., Dierschke v. Central Nat. Branch of First Nat. Bank at Lubbock,* 876 S.W.2d 377 (Tex. App. -- Austin, 1994).

It also is significant that none of the assets of the Archer Trust – whatever those assets may be – have been transferred to the Chambers Trust. When an intervivos trust

---

[6] A trustee is required to administer a trust according to its terms under Texas law. *See* TEX. PROP. CODE § 113.051. It should also be noted that, when a settlor chooses to use the word "shall" in a trust instrument, it imposes a mandatory obligation on the trustee. *See In re Orsagh*, 151 S.W. 3d 263, 267 (Tex. App. – Eastland 2004).

12

names a third party as the trustee, legal title to the trust assets must be actually delivered to the trustee. *Marshall v. Marshall*, 786 S.W.2d 493 (Tex. App. – Texarkana 1990); *Perfect Union Lodge # 10 v. InterFirst Bank,* 748 S.W.2d 218, 220 (Tex. 1988); *Wells v. Sansing*, 245 S.W.2d 964 (Tex. 1952). In this case, however, the sole asset that the Chambers Trust document shows was transferred to the Bank of Texas as trustee of the Chambers Trust is ten dollars. No fiduciary income tax returns have been filed for the Chambers Trust by the Bank of Texas in its capacity as the trustee of the Chambers Trust. Moreover, in a declaration attached to the Chapter 7 trustee's motion for summary judgment, Michelle Chambers complains that the Bank of Texas continues to hold all of the assets of the Archer Trust as the trustee for the Archer Trust.

Inasmuch as the parties do not dispute that no assets were delivered to the Chambers Trust, and based on the parties' summary judgment evidence, the Court concludes that there has been no transfer of assets from the Archer Trust to the Chambers Trust. The Archer Trust is clearly a spendthrift trust. Michelle Chambers does not have legal title to the corpus of the Archer Trust or any right to alienate her interest in the Archer Trust. To the extent the reference to a "vested" interest in "all of the assets of the Archer Trust" supports the Chapter 7 trustee's contentions, it appears to the Court the Chambers Trust Agreement is susceptible to such an interpretation by reason of careless drafting or a mutual mistake of fact existing between Michelle Chambers on the one side and the Bank of Texas on the other regarding whether Michelle Chambers held a "vested" interest in "all of the assets of the Archer Trust" at the time of the execution of the Chambers Trust. *See 1st Coppell Bank v. Smith,* 742 S.W.2d 454, 465 (Tex. App. - Dallas 1987) ("We hold that the mistake, if one of law, involved antecedent, private, legal

13

rights and may be treated as a mistake of fact"); *Plains Cotton Coop. Ass'n v. Wolf,* 553 S.W.2d 800, 803-04 (Tex. Civ. App. - Amarillo 1977, writ ref'd n.r.e.) (plaintiffs entitled to relief where they entered into written contract on mistaken belief that prior oral contract already bound them to sell cotton at the contract price); and *Empire Gas & Fuel Co. v. State,* 21 S.W.2d 376, 379 (Tex.Civ.App. - Austin 1929), *affirmed on other grounds, Empire Gas & Fuel Co. v. State,* 121 Tex. 13 8,47 S.W.2d 265 (Tex. 1932) (lessee gas company and land owner were mistaken as to the private right and title of land owner to fifteen-sixteenths of the oil and gas estate in ignorance of the effect of statute).

## CONCLUSION

For the foregoing reasons, the Court concludes that Michelle Chambers' interest in the Archer Trust is subject to a spendthrift provision. The Court further concludes that Michelle Chambers' interest in the Archer Trust has not been transferred to the Chambers Trust and is not subject to turnover by the Chapter 7 trustee pursuant to 11 U.S.C. §542(a). The Court will enter a separate Judgment consistent with this Memorandum Opinion that the Chapter 7 trustee shall take nothing by his complaint in this adversary proceeding.

Signed on 2/25/2008

*Brenda T. Rhoades*      MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE